Mr. Guico has asked me several times, what did I do wrong here? Truthfully, I can't answer that question. He's played by the rules. The L-1 visa, which was passed by Congress maybe 40, 50 years ago, envisions the promotion of international commerce. And Mr. Guico obtained an L-1 visa, a one-year L-1 visa from the government to set up a U.S. company, which he did do. And in obtaining the L-1 visa, requirements were met. He had to have demonstrated that there was an affiliate relationship between his Philippine company and the U.S. company, that he was employed in an executive-slash-managerial capacity for the Philippine company and would be doing so for the U.S., that operations for the Philippine company were bona fide, and that the U.S. company would be bona fide. Can I ask you a factual question? Yes. What evidence did you submit to USCIS to obtain the original L-1A visa approval? Was it the same evidence you submitted in the extension application, for example, the same list of job duties and financial information? Is the full initial petition with all supporting evidence available in the record someplace? Could you assist me in that? I wasn't the attorney that filed the initial L-1, but my understanding is the documentation establishing the affiliate relationships, the stock certificates would have had to have been submitted in the initial submission. Documentation pertaining to the overseas operations of the Philippine company would have had to have been submitted initially. Operations of the U.S. company couldn't have been submitted initially because this was a startup company. See, the L-1 is only going to be issued for a one-year period because the government wants to determine after one year what level of activities have been conducted in the U.S. So really, other than the formation of the U.S. company, nothing would have been provided initially. But as the Brazil Quality Stones case decided by the Ninth Circuit makes abundantly clear, the company has to be doing something within that one-year period of time or the extension is not going to be granted. So what happened in this case, unlike – well, in Brazil Quality Stones, all that was done really was that the company provided a brochure that it was looking at for the prospective purchase of equipment, and that was it. And the Ninth Circuit said, you've got to do a lot more than that. Now, in this case, what was established at the time of extension, and that could not have been submitted initially, was that Mr. Grieco documented that he purchased two homes, that these homes were refurbished. They were converted into residential care facilities for the elderly, that he hired U.S. staff, and that the homes were then housed by people requiring that their everyday living concerns be looked after. That's what was done during the year. So this man operated in good faith. Did you give the specific list of duties that he performed? I beg your pardon? Did you give the specific list of duties that he had in doing all of this? I think it was done very briefly and personally. Again, this was prior counsel on the I-129 form, but then the bulk of it was explained at the time of the motion to reopen. So it was not submitted as usually required. Also, they required that evidence be submitted that Tribease Marketing had paid for Tribease Homes, such as the notice of transaction pursuant to the Corporation's Code. That was not submitted. Is that correct? Well, 214.2L14II does not require the documentation that you've discussed. It requires a statement, emphasis on the word a statement, of the job duties that Mr. Guico had performed during the year and would be performing prospectively. And this makes sense because if someone's putting thousands of dollars into a business to make it work, the requirements are not going to be onerous on an extension because the policy considerations here are vast. Why have somebody spend thousands of dollars to make a business work, only to have basically their legs cut from underneath them to lose everything? Mr. Guico now is in removal proceedings. He's in the process of being deported. This man spent thousands of dollars to make this business work, and the policy considerations for other businesses is vast here. What are we going to do to companies? We're going to give them a one-year visa and we're going to grant it, and then after spending all this money to make the business go, they stand an enormous risk of having the petition denied. And what happens to the people that are working there? What happens, in this case, to the residents living in the home? I mean, there are some very vast considerations here. But, counsel, I appreciate your putting out the public policy here and making your argument, but what's the standard of review that I have? It's my understanding that we're really taking this on an abusive discretion review. We can't substitute our own view in consideration of what the underlying policymaker did, can we? All we have to do is look at the evidence and look at what evidence is here in this record and suggest whether there's substantial evidence to sustain what the policymaker decided. Isn't that the standard? I would agree. Okay, so if that's the standard, then what the policymaker said was that they failed to establish that the beneficiary will primarily perform managerial or executive duties. Isn't that what they said? Isn't that what they said? That is what they said, yes. And if we look at the specific duties, I didn't find any place in this record where your client said what he did on a daily basis. I couldn't find it. Look for it. Do you find it in there? On the form? I don't find anything on the form or in any of the information that he submitted what he did on a daily basis. It also fails to provide any breakdown of the time he would spend on his duties. None. You can't even dispute that. It isn't even there. I couldn't find it and I didn't think you disputed it. And lastly, he did not establish that he would supervise professional employees. He didn't submit any job description or qualification of his subordinates. In the new evidence, he does not show that they're professionals, but he shows they're subordinates. Now, if I look at that and I look at the evidence he gave and it's an abuse of discretion standard, I guess I'm trying to figure out how can I say that they abused their discretion when he failed to establish that the beneficiary would perform managerial or executive duties. If you can give me some help, I'm glad to go there. The regulation at 214.2L14II merely requires a statement of what Mr. Glico did during the preceding year and what he will be doing prospectively. It does not require that he go into the day-to-day functions. And the evidence, especially on what was submitted by prior counsel in the motion to reopen, that I will again contend that needs to be sent back to the service center and Laguna Niguel for review and consideration as opposed to treating this matter as an appeal. Well, I appreciate your argument on whether it should be an appeal or not, but the bottom line is on that it's a harmless error standard. So I'm kind of stuck. I mean, whether they did it as an appeal or whether they did it as a motion to reopen, it's harmless error. So I've got to get to the ultimate question. Then the next question is, they say, failed to establish that the parent and the corp were qualifying organizations. Well, that should say that the parent must at least own 50%. Well, you can't use an attorney's explanation. That's not evidence. You could have submitted a notice of transaction pursuant to the corporation's code. You didn't. The tax return can't be used because you're not primarily owned by a foreign company. So, again, I'm stuck. Stock certificates were submitted, and the explanation from the CPA in the motion to reopen clarified that it was a foreign-owned corporation. Again, that was documentation that should have been considered by the service center. But as I understood it, the amended form or what you tried to show in the amended form wasn't even of the same period. I think it was the 2006 return. I think it was of the period. And the CPA explained that they made a mistake in not properly delineating the ownership. And so I think that was submitted as part of the motion to reopen to clarify, in conjunction with the actual stock certificates. Matter of fact, it says that stock certificates alone is sufficient to demonstrate ownership and control. And clearly, the stock certificates show that Mr. Guigo owns more than 50% of Tri-V's Market in the Philippines, and more than 50% of Tri-V's Marketing owns Tri-V's Homes. So, as a result, ownership and control was established. Matter of fact, it has never been overruled. I agree with that. However, I'm still on an abusive discretion standard. I'm just having a tough time. That's why I'm asking you these questions. When I go to the third, did not establish that he was employed primarily in a managerial or executive position for continuous one year. I look at the responsibilities list. It's vague. It really doesn't say. He never gave the employees' position, and he failed to list the time supervising. So, again, I'm stuck. Well, 214.2 L14II merely states, in regards to L1 extensions as to staffing, you're supposed to list the number of employees, the wages paid, and the job titles, and that's it. And under the Kazarian case, the regulation, the plain language of the regulation is what governs here. So they gave whatever was asked for in the regulation. Do you want to save your last three minutes for rebuttal? Or you don't have to. You can continue using them now. I'll rest on the arguments. Well, I'd like to save in case. Yes, I'd like to save three minutes for rebuttal. Your Honor, as counsel, may it please the Court, my name is Elizabeth Lee Walker, and I'm representing the government, the appellees in this action, and we ask that you affirm the district court's decision that they failed to show under the APA that the denial of his L1A visa was arbitrary, capricious, or abuse of discretion, and also that defendants treated the Form 290B with the applicable regulations, case law, and BIA precedent. I want to start with the purpose of what is an L1A intercompany transfer visa, because I agree that it's for supporting international business and legitimate foreign investment in the U.S., and it's to encourage the creation of jobs for U.S. workers. It is not for sole proprietors to take advantage of this classification, which seems to be what is happening here. Here we've got someone who is a general manager of a supermarket in the Philippines who is essentially a first-line supervisor there who then wanted to come to the U.S. to start residential care facilities for the elderly. The record doesn't show how those two are related, but at the end of the day when you look at who's actually on the payroll, there's only three people. The beneficiary, who is taking in $9,000 a month, then you had his wife, who is an administrator without a baccalaureate degree, taking in $3,000 a month, and one administrator-slash-caregiver who is taking in $3,000 a month. So they're not a creation of a lot of jobs for the U.S. here, and out of the money that he says he puts in, he's also reaping back that money. But really when we look at the three independent and separate grounds for which he has not proven by a preponderance of the evidence, which is his job to do, none of these three grounds have been met, which the first is the foreign worker will be primarily engaged as a primarily managerial and executive capacity in the U.S., also has to show that he worked at the foreign company for one continuous year in a managerial and executive position before relocating to the U.S., which he has not shown here, and also has to show that the U.S. office qualifies as a parent, child, or sister company to the foreign company. Let me ask you this, Counsel. We don't appear, or at least I didn't find in the record, the evidence that he was submitted to get his initial L1A petition. Now, he got the petition. Evidently, the evidence he submitted at that time was deemed sufficient. Why wouldn't that be sufficient now? For each stage of the process of when you apply, you have to show a preponderance of evidence that you meet each of these three criteria. And a previous approval of L1A petition does not preclude CIS from denying an extension. Assuming that that's true, he indicated that he complied with everything that the regulation required in terms of listing and so forth. What is your response to that? He simply has not met the regulations. The regulations require a preponderance of evidence to meet each of these things. CIS found that they needed more evidence to see that he actually met these requirements. They sent a request for evidence. The petitioner simply did not comply because they didn't provide the requested documents. And so, basically, that was the first strike that was there, is they didn't comply with the request for evidence, and so CIS denied the petition. And then they did a motion to reopen and reconsider. AAO denied that, and then they went to the district court. So, basically, they've already had three strikes. This is the fourth crack at the bat. We're here at the appellate level. We're not seeing any new evidence. We're not seeing that they have met, through a preponderance of evidence, any three of these standards. I think we're talking about some different things. There's an original application for the visa, and then there's the one after, one year of the renewal. If I understand that, Judge Nelson was asking you about the initial one, whether that complied. And if it didn't comply, then doesn't that end the visa? Is that correct? No. Actually, it did comply. The original one, as you stated, stated enough. I couldn't find what the original application. I thought my question was, if it complied initially, why didn't it comply a year later? I understood your answer to be that there were different requirements under the regulation for the year later. They look back to see what happened during that year. Is that right? Sure. Let me cover a few different issues. Well, the first one, one of the grounds was that the firing company didn't really comply. Did it comply the first time? We don't actually have on the record from what I just looked through our supplemental excerpts the original application. We do have the original. I can't really look for it and couldn't find it either. We don't have it, so I think it's not in the record from what we have, and I don't think that the counsel has it either. We do have the original approval. But you have the same requirement in the first one. It's not the same requirement because for – You do have to show – That would seem to be the same. Yes, right. You do have to show at the beginning that there's a qualifying relationship between the companies, but every time that you apply for an extension, you still have to meet that. It's not that it's waived just because the first time you may have met it. For a new office, they give – the agency gives quite a bit of latitude for you to actually establish the subsidiary, and that's part of how they encourage U.S. businesses. Well, it seems they don't want to encourage citizens if they don't comply with the requirement that the foreign corporation, whatever it happens to be the requirement, let's say that it has to be in business for 10 years. If you said yes, it complies with that to give the initial approval, then shouldn't it also qualify for the extension? Not necessarily, Your Honor, because in the first year when you're going to establish a new business, they might need some time to actually sell the stocks or to develop the organizational hierarchy within the business to actually grow it within the U.S. So then they're giving the year where they can actually then show that it's going to be a qualifying organization as a sister or a child company of the parent. Okay, well, I don't want to take your time any further on that. No, but Judge Reinhart was correct. My question, Brucey, was if they met the requirements at the beginning and if we still have the same evidence, why don't they meet the requirements now? Right. They were given the year to establish that relationship as a qualifying organization. They simply did not do it. They say on the I-94, which is in our supplement excerpts, that the approval of this petition for the new office does not guarantee subsequent approvals of other eligibility or extensions of an L-1A visa. And so you can plan for an expansion and a development of subsidiary in the U.S., and then you have a year to do it, and it is an all-or-nothing year that they give. I think I understand that you have to do certain things within the one year and that part of your case, at least, is that they didn't do what they had to do within the one year. Correct. I think Judge Nelson's question is does that have anything to do with a separate ground as to what kind of an organization it was in the Philippines and what the applicant's relationship was with that organization. Well, the record is not clear on what they originally submitted, but even if they did show that it was a qualifying organization at the time of when they submitted for a new office as an L-1A visa, it's really of no importance because even when they filed for the extension, they still have to show that they're a qualifying organization. And the only documents that they've provided is a stock certificate, which they base upon the actual money that they brought in, in their pockets by him and his wife of over $10,000 in cash, into the U.S. in order to purchase those stocks. And at every level from CIS, AAO, and the district court found that this evidence was weak and contradictory to establish that they were a qualifying organization. And they could have submitted a notice of transaction pursuant to the code 25-102-F, right? That would have been a simple thing to do. They did not do it. Correct. And that's one of the reasons that at every level they found that the evidence was weak and contradictory instead of just having a statement from counsel, which does not constitute evidence, according to Ibinga, for BIA precedent. And we see that it's counsel that has provided the statement of they brought the cash in. We have no paper records of that whatsoever. We have no idea if that cash came in or where it came from and how that's actually related to the parent company back in the Philippines. All they said is a statement from counsel. It's the same with the list of duties. And if we look at the evidence that they say we should have looked at, which evidently was not looked at on the motion to reopen, the only thing in there is a tax return, and that tax return doesn't show the proper ownership. It wasn't on there. They never explained the discrepancies, and it wasn't even for the same period as I read it. We agree, Your Honor. I think that's a good summary except for one thing, that we would contend that the AAO actually did consider the evidence. And if you read their decision, particularly on the tax form, that they looked at that quite in depth. And the tax repair, it's really just one line at the top where it says that it was inadvertently submitted. And they said that that was kind of parallel to submitting a birth certificate in the after fact. That is kind of a – it's just evidence that we can contradict you all the way and there's inconsistencies and it's difficult for the agency to conclude that there's actually a qualifying organization. And on that separate and independent ground alone is the reason to deny the petition and shows that neither the district court nor the AAO nor CIS abused the discretion in coming to this decision. Thank you, counsel. Thank you. Just a few points of clarification regarding the L-1. Initially, it's irrelevant what type of business a company is engaged in abroad as opposed to what it's going to be doing in the U.S. There's nothing in the law that requires that it has to be the same type of business. So I would dispute that point. Secondly, regarding the qualifying organizations, when Mr. Glico first obtained the L-1 visa, it had to be established that the Philippine company and the U.S. companies were related, either as subsidiaries or affiliates, and so this requirement never changed. So what we have here is, on the one hand, he was granted the L-1 because he met these requirements and now the government is saying, well, you didn't meet these requirements on extension. After thousands and thousands of dollars was spent in developing the business. And I think that's highly problematic. And in the Asuta Medical Center case decided by the Ninth Circuit, the government was warned about situations like that where they grant visas and then they change their minds because maybe they didn't agree with their decision that was made initially after significant action had taken place. What about the request for additional evidence that they failed to comply with? I mean, they could have submitted the notice of transaction. It would have been so easy. I'll be honest here. I don't know why previous counsel didn't do the job that should have been done in this case. And I agree that that is problematic here. On the other hand, they did submit additional documents that are highly probative to this case in the motion to reopen, and that has to be, pursuant to ACFR 103.5, that has to be going back to the USCIS Western Service Center in Laguna Niguel for consideration. Then if they want to deny it, then deny it and then let's take it up on appeal. But I think that the respondent, especially in light of the vast sums of money that was spent here and the fact that it has hired employees, there's nothing to say that it has to be employees. Again, the 214.2 L-14ii reg merely states, list the number of employees, what are their job titles, and how much are they getting paid. That's all it requires. So the agency is above and beyond the regulation. So at the end of the day, Mr. Guico is asking that the matter, that the additional documents that were submitted on the motion to reopen, that yes, in the best of worlds, would have been submitted previously, but it wasn't. But in light of the 103.5 regulation and the bona fides of Mr. Guico here, that at least go back to the agency. And then if it wants to deny it, then let the adjudicating officer in Laguna Niguel deny it. And then it can go through the appellate process as an appeal pursuant to 103.3. Thank you. The case just argued will be submitted. The next case on the calendar for oral argument is Co-F versus Euromotors Auto Gallery. Thank you.
judges: Nelson D. W., Reinhardt, Smith N. R.